# United States Court of Appeals for the Federal Circuit

---

**IN RE: CUOZZO SPEED TECHNOLOGIES, LLC,**
*Appellant*

---

2014-1301

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2012-00001.

---

## ON PETITION FOR REHEARING EN BANC

---

JOHN ROBERT KASHA, Kasha Law LLC, North Potomac, MD, for appellant. Also represented by TIMOTHY M. SALMON, Basking Ridge, NJ.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor Michelle K. Lee. Also represented by SCOTT WEIDENFELLER, ROBERT J. MCMANUS; MARK R. FREEMAN, MELISSA N. PATTERSON, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC.

BARBARA A. FIACCO, Foley Hoag LLP, Boston, MA, for amici curiae 3M Company, Caterpillar Inc., Eli Lilly and Company, General Electric Company, Glaxosmithkline LLC, Illinois Tool Works, Inc., Johnson & Johnson, Pfizer Inc., Procter & Gamble, Sanofi US. Also represented by SARAH BURG, DONALD ROSS WARE.

PRATIK A. SHAH, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, for amicus curiae Pharmaceutical Research and Manufacturers of America. Also represented by ZE-WEN JULIUS CHEN, EMILY CURTIS JOHNSON.

DAVID W. LONG, Dow Lohnes, PLLC, Washington, DC, for amicus curiae Intellectual Property Owners Association. Also represented by PHILIP STATON JOHNSON, Johnson & Johnson, New Brunswick, NJ; KEVIN H. RHODES, 3M Innovative Properties Company, St. Paul, MN; ELEY OGDEN THOMPSON, Foley & Lardner LLP, Chicago, IL; HERBERT CLARE WAMSLEY, JR., Intellectual Property Owners Association, Washington, DC.

EUGENE M. GELERNTER, Patterson Belknap Webb & Tyler LLP, New York, NY, for amicus curiae New York Intellectual Property Law Association. Also represented by IRENA ROYZMAN, SCOTT B. HOWARD; ANTHONY FRANCIS LO CICERO, CHARLES R. MACEDO, Amster Rothstein & Ebenstein LLP, New York, NY.

————————————————

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, and HUGHES, *Circuit Judges.*

Opinion concurring in the denial of the petition for rehearing en banc filed by *Circuit Judge* DYK, in which *Circuit Judges* LOURIE, CHEN, and HUGHES join.

Opinion dissenting from the denial of the petition for rehearing en banc filed by *Chief Judge* PROST, *Circuit Judges* NEWMAN, MOORE, O'MALLEY, and REYNA.

Opinion dissenting from the denial of the petition for rehearing en banc filed by *Circuit Judge* NEWMAN.

PER CURIAM.

# **O R D E R**

Appellant Cuozzo Speed Technologies, LLC, filed a petition for rehearing en banc. A response to the petition was invited by the court and filed by Intervenor Michelle Lee, Director of the United States Patent and Trademark Office. The petition and response were referred to the panel that heard the appeal, and thereafter the petition and response were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

IT IS ORDERED THAT:

(1) The petition for rehearing en banc is denied.

(2) Absent a petition for rehearing, the mandate of the court will issue in fifty-two days.

FOR THE COURT

  July 8, 2015 
        Date

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**IN RE: CUOZZO SPEED TECHNOLOGIES, LLC,**
*Appellant*

---

2014-1301

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2012-00001.

---

DYK, *Circuit Judge*, with whom LOURIE, CHEN, and HUGHES, *Circuit Judges*, join, concurring in the denial of the petition for rehearing en banc.

The dissenting opinions' sole arguments for eliminating the broadest reasonable interpretation standard in inter partes review ("IPR") proceedings are that (1) IPR proceedings are a substitute for district court litigation, so the district court claim construction standard should apply; and (2) the right to amend in IPR proceedings is limited.

Neither argument supports setting aside the longstanding practice of applying the broadest reasonable interpretation standard in United States Patent and Trademark Office ("PTO") proceedings. The PTO has applied the broadest reasonable interpretation standard in a variety of proceedings for more than a century. *In re Cuozzo Speed Techs., LLC*, No. 14-1301, slip op. at 12 (Fed. Cir. July 8, 2015). Interference proceedings are

adjudicatory, *see Brand v. Miller*, 487 F.3d 862, 867–68 (Fed. Cir. 2007), but nonetheless apply a variant of the broadest reasonable interpretation standard, *see, e.g.*, *In re Baxter*, 656 F.2d 679, 686 (CCPA 1981).

Nothing in the America Invents Act ("AIA") indicates congressional intent to change the prevailing broadest reasonable interpretation standard. The dissents are wholly devoid of any evidence in the legislative history that Congress intended in the AIA to change the standard, and we must interpret the statute in light of the long history of the use of the broadest reasonable interpretation standard in PTO proceedings. "What is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." *Finley v. United States*, 490 U.S. 545, 556 (1989), *superseded by statute on other grounds as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). Far from intending to change the standard, Congress conveyed rulemaking authority to the PTO to prescribe regulations, *inter alia*, "establishing and governing inter partes review," 35 U.S.C. § 316(a)(4), and the PTO has adopted the broadest reasonable interpretation standard for IPR proceedings, 37 C.F.R. § 42.100(b). In the absence of evidence of congressional intent to abrogate the broadest reasonable interpretation standard, we should not act to adopt a different standard based on our own notions of appropriate public policy. If the standard is to be changed, that is a matter for Congress. There are pending bills which would do just that.[1]

---

[1]  *See* Innovation Act, H.R. 9, 114th Cong. § 9(b)(1)(C) (2015) (as reported by House Judiciary Committee on June 11, 2015, with Manager's Amendment in the nature of a substitute); PATENT Act, S. 1137, 114th Cong. § 11(a)(4)(A)(vii) (2015) (as reported by Senate

Judiciary Committee on June 4, 2015, with Manager's Amendment in the nature of a substitute); STRONG Patents Act of 2015, S. 632, 114th Cong. § 102(a) (2015) (as introduced on March 3, 2015).

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: CUOZZO SPEED TECHNOLOGIES, LLC,**
*Appellant*

---

2014-1301

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2012-00001.

---

PROST, *Chief Judge*, NEWMAN, MOORE, O'MALLEY, and REYNA, *Circuit Judges*, dissenting from the denial of the petition for rehearing en banc.

Inter partes review ("IPR") is a new, court-like proceeding designed to adjudicate the validity of issued patent claims. In adjudicatory proceedings, claims are given their actual meaning, not their broadest reasonable interpretation. For this reason, we respectfully dissent.

## I

The panel majority holds that "Congress implicitly approved the broadest reasonable interpretation standard in enacting the [America Invents Act ("AIA")]." Revised Panel Op. at 16. This conclusion cannot stand, as it does, on a silent statute, a contrary legislative history, and a line of case law that counsels an opposite result.

First, the panel decision ignores the usual rule that, "[o]rdinarily, 'Congress' silence is just that—silence.'" *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 749

(1989) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)); *see also Kimble v. Marvel Entm't, LLC*, 576 U.S. __, __ slip op. at 7 (2015) (Alito, J., dissenting) ("[I]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.") (quoting *Girouard v. United States*, 328 U.S. 61, 69 (1946)). While there may be occasions when a court may glean congressional intent from congressional inaction—for example, when there is a settled judicial interpretation of a statutory section which Congress then re-enacts without change, *see Lorillard, Div. v. Pons*, 434 U.S. 575, 580 (1978); *United States v. Powell*, 379 U.S. 48, 55 n.13 (1964); *cf. Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 351 (2005)—this is not such an occasion. There is no statutory section, reenacted by Congress, which has been subject of settled judicial interpretation in favor of the broadest reasonable interpretation. Nor could there be—the AIA is a new statutory regime. Although we have previously considered the appropriateness of the broadest reasonable interpretation in other U.S. Patent and Trademark Office ("PTO") proceedings, now we are deciding the proper interpretation of a new statute creating a wholly novel procedure. Silence has no meaning in this context.

Here, Congress was not legislating within an already existing regime. To the contrary, Congress created IPRs as a "new post-grant review procedure" that would provide "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112–98, pt. 1, at 40, 45 (2011). Originally, Congress established the reexamination process to effect this goal, but in light of the limitations, timing, and costs of these proceedings, Congress decided to start anew and establish new post-grant review procedures, including IPR, in the AIA. *See id.* at 45–46 (noting the problems with the reexamination process and Congress's attempts to remedy these issues

with amendments before the enactment of the AIA). And it did so by "convert[ing] inter partes reexamination from an examinational to an adjudicative proceeding." *Id.* at 46; *see also id.* at 68 (stating that the AIA would "[e]stablish a new procedure, known as post-grant review," noting that this procedure "would take place in a court-like proceeding"). As the dissent aptly summarizes: "The post-grant proceedings established by the America Invents Act were intended as a far-reaching surrogate for district court validity determinations." Revised Dissenting Op. at 3. Congress's intent in creating a completely new type of PTO proceeding—one bearing the efficiency and finality of district court adjudications of patent validity—could not have been clearer. The panel majority fails to explain why Congress (or anyone else) would have thought it desirable or necessary for the Board to construe the claims during IPRs under a different legal framework than the one used by district courts.

Second, our background of existing law not only fails to support the conclusion drawn by the panel majority, it points to the *opposite* result. Specifically, we have long explained that the broadest reasonable interpretation standard is a useful tool, *prior* to patent issuance, for clarifying the metes and bounds of an invention during the back-and-forth between the applicant and examiner when claims are not yet in their final form. *In re Prater*, 415 F.2d 1393, 1405 (CCPA 1969) ("Claims yet unpatented are to be given the broadest reasonable interpretation consistent with the specification during the examination of a patent application since the applicant may then amend his claims, the thought being to reduce the possibility that, after the patent is granted, the claims may be interpreted as giving broader coverage than is justified."); *In re Buszard*, 504 F.3d 1364, 1366–67 (Fed. Cir. 2007) ("The patent examiner and the applicant, in the give and take of rejection and response, work toward defining the metes and bounds of the invention to be patented."); *In re*

*Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989) ("[D]uring patent prosecution when claims can be amended, ambiguities should be recognized, scope and breadth of language explored, and clarification imposed.").

It is the same give-and-take between applicant and examiner that we have said likewise justifies use of the broadest reasonable interpretation standard in certain post-grant proceedings. *In re Yamamoto*, 740 F.2d 1569, 1572 (Fed. Cir. 1984). Indeed, when claims in post-grant proceedings are *not* eligible for modification because they have expired, the broadest reasonable interpretation standard does not apply. *In re Rambus, Inc.*, 753 F.3d 1253, 1256 (Fed. Cir. 2014).

But in district court adjudications, where the applicant lacks "the ability to correct errors in claim language and adjust the scope of claim protection as needed," the broadest reasonable interpretation standard does not apply. *Yamamoto*, 740 F.2d at 1572. Rather, a district court "assign[s] a fixed, unambiguous, legally operative meaning to the claim." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005). The point is to arrive at a "concise statement[] of the subject matter for which the statutory right to exclude is secured by the grant of the patent." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1476, 1476 (Fed. Cir. 1998); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) ("[A] patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty."). To find otherwise would ignore the difference between the broadest reasonable interpretation and what a patent *actually* claims. In obtaining a patent, a patentee discloses his invention to the public in exchange for a limited monopoly, as defined by the claims of the patent. To invalidate those claims using a different standard than one that considers the true meaning and

scope of a claim would violate the bargain the patentee struck with the public.

IPRs should be no different. As in district court adjudications, the goal in IPRs is to provide an efficient and effective vehicle for examining the validity of an issued patent. And unlike the PTO proceedings in which we have sanctioned the broadest reasonable interpretation standard, IPRs do not bear the traits that justify the broadest reasonable construction. During IPRs, there is no back-and-forth between the patentee and examiner seeking to resolve claim scope ambiguity; there is no robust right to amend. To the contrary, an IPR is a curtailed, trial-like proceeding meant to efficiently resolve a challenge to patent validity. It may only be instituted on limited grounds, 35 U.S.C. § 311(b), and must conclude within one year (unless extended for six months upon a showing of good cause), 35 U.S.C. § 316(a)(11). The proceeding consists of a brief period of discovery, one round of briefing by the petitioner and challenger, and an oral hearing, before the Board issues its final decision. During this process, the patentee is not given the right to amend its claims, but must instead seek the permission of the Board. 35 U.S.C. § 316(d). Even then, the patentee is limited to "one motion to amend," with additional motions allowed only "to materially advance the settlement of a proceeding" or "as permitted by regulations prescribed by the Director." *Id*. Given the absence of examinational hallmarks justifying the broadest reasonable interpretation standard in other contexts, and the similarities to district court litigation, it is unclear to us why the district court standard should not apply.

Even the panel majority acknowledges the adjudicative nature and the limited amendment process of IPRs. Revised Panel Op. at 14–16. Yet it brushes these distinctions aside without substantive analysis. With respect to adjudication, the panel majority's sole response is to claim that the adjudication/examination distinction is irrele-

vant, and to point to the interference proceeding as one which is "in some sense adjudicatory" and uses "a variant of the broadest reasonable interpretation standard." *Id.* at 16. This argument fails to address Congress's clear intent to equate the particular IPR proceedings at issue here with those occurring in district court.

With respect to amendments, the panel majority observes that "[a]lthough the opportunity to amend is cabined in the IPR setting, it is nonetheless available." *Id.* at 15. But the court fails to explain how a "cabined" amendment process fits within our prior case law emphasizing the "readily" available nature of amendments in other proceedings in which the broadest reasonable interpretation is appropriate. *Burlington Indus., Inc. v. Quigg*, 822 F.2d 1581, 1583 (Fed. Cir. 1987) ("Patent application claims are given their broadest reasonable interpretation during examination proceedings, *for the simple reason that before a patent is granted the claims are readily amended as part of the examination process.*") (emphasis added). We also find unclear the panel majority's observation that this particular case "does not involve any restriction on amendment opportunities that materially distinguishes IPR proceedings from their predecessors in the patent statute" and that, "[i]f there are challenges to be brought against other restrictions on amendment opportunities as incompatible with using the broadest reasonable interpretation standard, they must await another case." Revised Panel Op. at 15–16. If the opinion means to imply that the correctness of the broadest reasonable interpretation standard depends on the specific type of amendments available in a given IPR, we find the suggestion problematic, as we do not see how the Board can be expected to determine whether a certain amendment restriction calls for one claim construction standard or another.

## II

Finally, the panel majority also holds that, even if "Congress did not itself approve the broadest reasonable interpretation standard in enacting the AIA, § 316 provides authority to the PTO to adopt the standard in a regulation." *Id.* at 17. According to the opinion, although § 316 does not grant the PTO the power to erect "substantive statutory 'patentability' standards," it nonetheless provides enough authority for the PTO to enact a regulation setting forth the standard by which claims shall be construed. *Id.* at 18. Concluding that *Chevron* deference therefore applies, the panel majority then decides that the adopted standard is reasonable "not just because of its pedigree but for context-specific reasons." *Id.*

It is far from clear to us that this is a case in which we must defer to the PTO's action. The panel majority bases its conclusion on subsections (2) and (4) of § 316. In our view, these subsections are consistent with Congress's previous grants of authority to prescribe *procedural* regulations. *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1336 (Fed. Cir. 2008) (interpreting 35 U.S.C. § 2). Subsection (2) describes regulations specifying standards for the "showing of sufficient grounds to institute a review." These regulations specify the burden the petitioner must meet for an inter partes review to be instituted. *See* 37 C.F.R. § 42.108(c). Subsection (4) describes regulations "establishing and governing inter partes review." These regulations provide for IPR's existence and control how the proceeding is to be conducted. Any doubts about the scope of subsections (2) and (4) are resolved by looking to the remaining eleven subsections of § 316, which are distinctly procedural. *Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124, 1132 (2015).

The majority states that a claim construction standard falls within subsections (2) and (4) because it "affects both the PTO's determination of whether to institute IPR

proceedings and the proceedings after institution." Revised Panel Op. at 17. But § 316 does not provide the authority to prescribe regulations on any issue that "affects" decisions to institute or later proceedings. The majority also asserts that the PTO's broadest reasonable interpretation regulation is the "opposite of a sharp departure from historical practice" because the PTO has long interpreted claims in this way. *Id.* at 18. Even if this were correct, basing the PTO's *authority* to prescribe a regulation on the content of that regulation puts the cart before the horse; the PTO's authority to prescribe a regulation must first be rooted in statute. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000).

Second, even if the regulation is properly classified as procedural, deference is still not warranted if the PTO's regulation "is contrary to the intent of Congress, as divined from the statute and its legislative history." *Muwwakkil v. Office of Pers. Mgmt.*, 18 F.3d 921, 925 (Fed. Cir. 1994). Here, Congress intended IPRs to be a viable alternative to district court adjudications of patent validity. Importing the broadest reasonable interpretation into IPRs "defeats the purpose of substituting administrative adjudication for district court adjudication." Revised Dissenting Op. at 15.

In any event, our joint dissent in this case does not turn on whether or not we apply deference to the agency. Even under the deferential *Chevron* framework, we would find the PTO's regulation unreasonable. *See Michigan v. EPA*, 576 U.S. __, __ slip op. at 6 (2015) ("Even under this deferential standard, however, 'agencies must operate within the bounds of reasonable interpretation.'") (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U.S. __, __ (2014) (slip op., at 16) (internal quotation marks omitted)). As our prior cases explain, it makes perfect sense in the course of examining a new or revised claim, as means of clarifying the metes and bounds of an invention, that the PTO construe the claim as broadly as it might reasonably

be construed in subsequent enforcement efforts.  But in IPRs, as in district court litigation, an already issued claim is being analyzed solely for the purposes of determining its validity.  In this context, it makes little sense to evaluate the claim against the prior art based on anything than the claim's actual meaning.

For these reasons, we respectfully dissent from the court's refusal to rehear this case en banc.

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: CUOZZO SPEED TECHNOLOGIES, LLC,**
*Appellant*

---

2014-1301

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2012-00001.

---

NEWMAN, *Circuit Judge*, dissenting from denial of the petition for rehearing *en banc*.

I write further in view of the extensive *amicus curiae* participation in this rehearing *en banc* petition, representing the technology-based foundation of the national economy. The position that the PTO, on post-issuance review, should not apply the claim construction that is applied by the courts, and thus need not achieve the objectively correct determination of validity, has no defender other than a majority of the Federal Circuit court.

The loser in this debate is the nation, for the ambitious plan of the America Invents Act is thwarted—a plan to rehabilitate the patent-based innovation incentive by creating a new and powerful adjudicatory tribunal in the PTO, a tribunal that would apply the law reliably and expertly, to achieve expedited and correct determination of patent validity.

A

All of the *amici curiae* criticize the panel majority position and urge *en banc* attention to this "matter of exceptional importance." The brief filed by the 3M Company, Caterpillar Inc., Eli Lilly and Company, General Electric Company, GlaxoSmithKline LLC, Illinois Tool Works Inc., Johnson & Johnson, Pfizer Inc., Procter & Gamble, and Sanofi US, states that together they "spend tens of billions of dollars annually and employ over a half million scientists, engineers and others in the United States alone to develop, produce, and market new products," and that they "collectively hold tens of thousands of patents [and] participate extensively in patent litigation." *Amicus Curiae* Br. of 3M *et al.* at 1. They advise the court that "the PTO's decision to use the BRI Rule is inconsistent with the AIA and sound patent policy." *Id.* at 2.

These *amici* "urge the Court to grant *en banc* review," and stress the importance of resolving this concern expeditiously, citing the thousands of current IPR proceedings. They state: "The lack of certainty as to the meaning (and therefore value) of a patent is costly to the inventive community and discourages innovation; it adversely affects patent licensing, design-around activities, and other critical business decisions, contrary to the goals of the AIA." *Id.* at 4. They observe that the "application of different standards in the PTO and judicial proceedings also means that each proceeding's claim construction has no estoppel effect for subsequent proceedings, further encouraging gamesmanship," and urge this court to correct the PTO's departure from congressional intent. *Id.*

The Intellectual Property Owners Association, citing its membership of "over 200 companies and 12,000 individuals involved in the association through their companies or as inventor, author, executive, law firm or attorney," Br. of IPO as *Amicus Curiae* at 1, states that:

"The use of BRI in IPR proceedings is rapidly undermining the public's confidence in the patent system. The [*Cuozzo*] panel's decision upsets the settled expectation of inventors, patentees, and all others who depend on the patent system." *Id.* The IPO urges the *en banc* court to review the panel's ruling, for "[i]nvestment decisions relating to research and development of new inventions and the commercialization of previously patented ones are now being chilled." *Id.* at 4.

The Pharmaceutical Research and Manufacturers of America reminds the court that pursuit of medical advances requires enormous investments—roughly $40-50 billion annually—"made possible by clearly defined and predictable patent law protections." Br. of *Amicus Curiae* PhRMA at 1. The *amicus* describes the broadest reasonable interpretation standard in the new post-grant proceedings as an issue of "particular importance." *Id. Amicus* New York Intellectual Property Law Association reiterates that the "issue is of great importance and should be re-heard *en banc*." *Amicus Curiae* Br. of NYIPLA at 4.

The *amici* explain the commercial, economic, and pragmatic implications of the majority position. They stress the need for clarity and predictability in the law on which commercial decisions are made, they emphasize the legislative purpose of the America Invents Act, and ask this *en banc* court to guide agency understanding of the statute. The majority of the court appears unperturbed.

In contrast, the legislative record of the America Invents Act is full of testimony in elaboration of the concerns of the nation's industries, that the system of patents is of diminished service to industrial growth and competitiveness, despite this era of scientific promise and creativity. The America Invents Act is the culmination of several years of effort, focused on achieving stability and predictability of patent validity determinations.

The *amici curiae* stress the need for investment-reliable patent rights, and the AIA's purpose of establishing this new administrative adjudicative authority. This purpose collapses if the PTO applies a unique rule of patent claim construction, different from the law of claim construction that is applied in the courts. The public interest in technological advance, and the national interest in a vigorous economy served by growth, employment, creativity, and trade, require that this court accept the petition for *en banc* rehearing.

B

The America Invents Act established a new PTO tribunal in order to achieve rapid, efficient, and correct resolution of issues of patent validity that heretofore required trial in the district courts after controversy arose. All of the *amici curiae* stress the importance, the value, of this new adjudicative plan. Yet the legislative purpose fails if the PTO applies different law than is applied in the courts. As the *amici* point out, and as current experience illustrates, instead of diminishing the gamesmanship, delay, and burdens of patent disputes, they are enhanced.

This was not the legislative intent.[1] As elaborated in my panel dissent and in today's *en banc* dissent, I tabulate some reasons why the "broadest reasonable interpre-

---

[1] Corrective legislation, requiring that "each claim of a patent shall be construed as such claim would be in a civil action" has been enacted in bills approved by both the House and Senate committees, but has stalled because of unrelated areas of controversy. *See* 2015 Patent Reform Innovation Act, H.R. 9, 114th Cong. § 9(b)(1)(C) (2015); Patent Act, S. 1137, 114th Cong. § 11(a)(4)(A)(vii) (2015). Prompt resolution is reported to be unlikely.

tation" is the improper standard for America Invents Act post-issuance procedures:

- Claims of issued patents are construed the same way for validity as for infringement; no precedent, no practical reality, authorizes or tolerates a broader construction for one than the other.

- The broadest reasonable interpretation is an appropriate examination expedient, for it aids definition of claim scope during prosecution, with ready amendment of pending claims. In contrast, in the AIA proceedings amendment requires permission, and is limited even when permitted.

- With PTO construction of issued claims more broadly than the basis on which they were granted, the patentee must now defend, in these AIA proceedings, the validity of claim scope he did not obtain from the PTO during prosecution.

- The AIA contemplated a streamlined surrogate tribunal for determination of validity. This requires that the same claim construction is applied in the PTO as in the district courts.

- The public notice role of patent claims requires the correct claim construction, not an arbitrarily broad construction of undefined limits.

- Neither the PTO nor any judicial precedent provides guidance as to how broad is "broadest," or sets any limits to this parameter. Predictability of legal rights, and stability of law, are replaced by fuzziness and uncertainty.

- The AIA designed the new PTO tribunal to "review the validity of a patent." It was expected that the PTO would apply the correct law of validity, while

drawing on PTO expertise in technology and PTO experience in patent law. It cannot have been intended that the PTO would not apply the correct law in these new post-grant proceedings.

The concurrence, in reinforcing denial of *en banc* review, states that claims of issued patents have been given their "broadest" interpretation for a hundred years, citing patent interferences and reissues. *See* Concurring Op. at 1–2. Any practitioner of patent interferences knows that the PTO, in determining conception, reduction to practice, corroboration, diligence, experimental support, etc., did not apply a "broadest" interpretation of anything. And reissues are directed to correction of the patentee's error; the purpose is to achieve correctness, not breadth. Contrary to the concurrence, the question before this court is not whether to "eliminate" BRI, but whether to impose it on issued patents, where it has not previously reposed.

This is a simple question, although of powerful consequence. As urged by the *amici curiae*, it should be answered correctly.